UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY

                              :
PAUL H. MCRAE,                :
                              :
          Plaintiff,          :        HONORABLE JOSEPH E. IRENAS
                              :        CIVIL ACTION NO. 04-2261
     v.                       :
                              :              **OPINION**
JOHN E. POTTER, POSTMASTER    :
GENERAL, UNITED STATES        :
POSTAL SERVICE,               :
                              :
          Defendant.          :


**APPEARANCES:**

F. Michael Daily, Jr., Esq.
216 Haddon Avenue, Suite 100
Westmont, New Jersey 08108
          Counsel for Plaintiff

CHRISTOPHER J. CHRISTIE, United States Attorney
By:  Paul A. Blaine, A.U.S.A.
401 Market Street, 4th Floor
Camden, New Jersey 08101
          Counsel for Defendant


**IRENAS**, Senior District Judge:

     Plaintiff, Paul McRae ("McRae"), a United States Postal

Service employee, brings this employment discrimination and

retaliation suit against the United States Postmaster General,

John E. Potter ("Postmaster General").  McRae alleges violations

of Title VII and breach of a settlement agreement which was

negotiated after he filed five complaints with the Equal

Employment Opportunity Commission ("EEOC").[1]  The Postmaster

---
     [1]  We have subject matter jurisdiction pursuant to 42 U.S.C. §§ 1331 and
1346.

General moves for summary judgment on all counts.

## I.

McRae has been a Postal Service employee for over 20 years. He has worked his way up from letter carrier to hold various supervisory positions, including Officer-In-Charge positions at various post offices.  McRae unsuccessfully applied for Postmaster positions at both the Penns Grove and Pitman, New Jersey, post offices.  He alleges that he was not selected because of his race and gender (McRae is an African American man) and in retaliation for his prior EEOC complaints.

In 2000 and 2001, McRae filed five separate complaints with the EEOC alleging various Title VII and age discrimination violations.[2]  On September 18, 2001, McRae and the Postmaster General entered into a settlement agreement covering all five complaints ("Settlement Agreement").  Among other things, the Settlement Agreement stated that McRae "will be assigned to as [sic] Officer-In-Charge of Pennsgrove [sic], New Jersey [Post Office] pending resolution of a nationwide R.I.F.[3] ongoing on this date . . . . [McRae] and all candidates for the Pennsgrove [sic] Postmaster position will be interviewed and [McRae] will be

---

[2]  The Complaint in this action does not assert age discrimination.

[3]  "R.I.F." apparently stands for "reduction in force."  It appears from the record that no hiring or promotions may take place during a reduction in force. (Pls. Ex. I at 64)

given favorable consideration for the vacancy." (Pls. Ex. B)

McRae, three other men and one woman participated in the competitive selection process for the Penns Grove Postmaster (pay grade EAS-20) position in the fall of 2002. At the time, McRae was the Customer Service Supervisor and temporary Officer-In-Charge at the Penns Grove post office, with a pay grade of EAS-16. (Defs. Ex. 8) The other candidates were: Richard Delp, Officer-In-Charge of the Penns Grove post office (EAS-20);[4] Daniel Yacucci, Postmaster of the Frankford, Delaware, post office (EAS-18); Donna Volzone, Manager of Customer Service and Officer-In-Charge at the Newark, Delaware, post office (EAS-19);[5] and Edward McWilliams, who withdrew from consideration before interviewing for the position. (Id.) These five candidates were selected for interviews from a larger pool of applicants. Pursuant to postal regulations, a three-person Applicant Review Committee recommended the five candidates as "the best qualified" for "final consideration" after reviewing each applicant's Form 991, which contains basic information about an applicant's education, work history, and specific knowledge, skills, and

---

[4] It appears from the record that Delp's position as Official-In-Charge was temporary and that his "regular" position was Postmaster at the Mount Ephraim, New Jersey post office. (Defs. Ex. 8)

[5] The parties do not dispute that sometime during the selection process, Volzone's pay grade was increased to EAS-20. However since there is some evidence in the record that the decision to select Volzone for the position was based on information that her pay grade was EAS-19, as opposed to EAS-20, we will construe the facts in the light most favorable to McRae, and proceed with EAS-19 as Volzone's pay grade.

abilities.[6]  (Defs. Exs. 7, 13)

The "selecting official,"[7] Denise Mason, conducted interviews of the four remaining candidates.  Mason selected Donna Volzone, a white woman, for the Penns Grove Postmaster position.[8]  In Mason's memorandum recording her evaluations of the candidates and selecting Volzone for the position, she states:

> After interviewing all the applicants . . . I am
> selecting Donna Volzone for the position of
> Postmaster, Penns Grove, NJ.
>
> Donna Volzone has 16 years of service.  During
> Donna's three year tenure as OIC [Officer-In-Charge]
> Newark Del. Donna made significant changes which
> increased productivity in the office.  Donna was
> extremely well prepared for the interview and
> provided numerous improvements that she would make
> to the office that could enhance productivity and
> improve community perception.
>
> . . .
>
> Paul McRae is currently the Supervisor Customer
> Service Penns Grove.  Paul has 19 years of service.
> Paul was moderately prepared for the interview.
> Paul could not answer questions related to base
> hours and the earned hour program when asked.  Paul
> stated that changes needed to be made in the office

---

[6]  One of the members of the Applicant Review Committee for the Pitman Postmaster position described the Form 991 as a "resume" "filled out in a particular format."  (Defs. Ex. 3B at 199)

[7]  Pursuant to postal regulations, "[t]he selecting official is the manager or supervisor with the vacancy.  The selecting official assesses the potential applicant pool, defines an area of considerations and selects candidates for designated vacancies.  He or she ensures that selections are made in keeping with all applicable selection principles, including equal employment opportunity laws and the Affirmative Action Program of the Postal Service."  (Defs. Ex. 5 at 189)

[8]  Mason is an African American woman.

4

> however he didn't do so as OIC because he was not
> the Postmaster.

(Defs. Ex. 8)

Based on these events, McRae asserts claims of breach of the Settlement Agreement, race and gender discrimination, and retaliation for his EEOC activities.

Less than a month after McRae was passed over for the Penns Grove Postmaster position, the Postal Service published a vacancy announcement for the Postmaster position at the Pittman, New Jersey, post office.  The same competitive selection process occurred whereby applicants were initially screened by the Applicant Review Committee,[9] although this time McRae was not selected to be among the five finalists.  Mason ultimately selected Richard Delp, a white male, for the position.

The Applicant Review Committee reviewed all application forms submitted.  The forms do not indicate an applicant's race.  Moreover, McRae does not assert that any of the committee members knew him.

Based on these events, McRae asserts Title VII claims of race discrimination and retaliation for his EEOC activities.

## II.

"[S]ummary judgment is proper 'if the pleadings,

---

[9]  The three people on the committee for the Pittman position were different than the three people on the committee for the Penns Grove position.

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56©)). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'"  *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*). "The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322; Fed. R. Civ. P. 56(e) (A party opposing summary judgment cannot rest upon the "mere allegations or denials of the adverse party's pleading" but must respond with affidavits or depositions setting forth "specific facts showing that there is a genuine issue for trial.").

"Summary judgment, of course, looks only to admissible evidence." *Arnold Pontiac-GMC, Inc. v. Budd Baer, Inc.*, 826 F.2d 1335, 1339 (3d Cir. 1987); *see also Blackburn v. United Parcel Service*, 179 F.3d 81, 95 (3d Cir. 1999)(noting that hearsay statements that are inadmissible at trial should not be considered when determining whether Plaintiff has established a triable issue of fact).

## III.

The Court will first address McRae's Title VII claims, analyzing his discrimination claims and then his retaliation claims.  The breach of contract claim arising out of the Penns Grove Postmaster selection process will be addressed last.

## A.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any

individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . " 42 U.S.C. § 2000e-2(a)(1).[10]

McRae must establish a prima facie case of discriminatory non-promotion by a preponderance of the evidence. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). McRae must show that (1) he is a member of protected class; (2) he was qualified for, applied for, and rejected for a position; and (3) that non-members of the protected class were treated more favorably. *Blue v. Def. Logistics Agency*, No. 05-3585, 2006 U.S. App. LEXIS 12903 at *4 (3d Cir. May 22, 2006)(citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973); *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 170 (3d Cir. 1991)). With respect to the third element, McRae must put forth sufficient facts supporting a "'causal nexus between [his] membership in a protected class and the decision not to promote [him].'" *Id.* at *5 (quoting *Sarullo v. United States Postal Service*, 352 F.3d 789, 798 (3d Cir. 2003)).

If McRae establishes a prima facie case, the burden shifts to the Postmaster General to "'articulate some legitimate, non-

---

[10]  Title VII's protections against discrimination apply to United States Postal Service employees pursuant to 42 U.S.C. § 2000e-16(a)("All personnel actions affecting employees or applicants for employment . . . in the United States Postal Service . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin.").

discriminatory reason for the employee's rejection.'" *Sarullo*, 352 F.3d at 797 (quoting *McDonnell Douglas Corp. v. Green*, 441 U.S. 792 (1973)).  Thereafter McRae must establish by a preponderance of the evidence that the Postmaster General's reasons were merely pretext for discriminatory intent.  *Id.*

The Penns Grove Postmaster Position

McRae asserts that he was not selected for the Penns Grove Postmaster position in part because of his race and gender. However, the only evidence he has put forth to support his claim that race or gender had some causal connection with his non-selection specifically for the Penns Grove position is that a white woman was selected for the job.

McRae points to other incidents in the past which he asserts demonstrates that "he has frequently been subjected to treatment less favorable" than that of white employees and women employees. (Pls. Br. at 2)  Specifically, McRae asserts in his answers to interrogatories that during the period of 1999 to 2000, thirteen postal employees who were outside his race and gender were "treated more favorably than me."  (Pls. Ex. A, Ans. To Interrog. 9)[11]  The Court fails to see the relevance of this evidence.  It

_____

[11]  McRae asserts that various postal employees were paid at a higher level for the same work, that others were provided with special resume building assignments while he was not, and that employees less qualified than he were promoted.  McRae puts forth no independent evidentiary support for the contentions in his interrogatory answers.

9

is undisputed that Denise Mason was the person who selected
Volzone over McRae for the Penns Grove position in the fall of
2002.  The fact that other people may have been treated more
favorably than McRae in different situations says nothing about
whether or not Mason's decision about the Penns Grove position
was based on race or gender.  Indeed, McRae has put forth no
evidence that Mason had any involvement whatsoever in any of the
1999 and 2000 incidents.

Similarly, McRae has submitted United States Postal Service
diversity statistics for the "postal quarter 2/2000" which he
vaguely asserts support his claims.  (Pls. Ex. C)  The table
apparently reports the distribution of employees by race, gender,
and pay level in McRae's district.[12]  Even assuming that this
evidence demonstrates a disparity that favors women and whites in
February, 2000, (the Postmaster General asserts that it does
not), it is too general to have any probative value with respect
to whether McRae was discriminated against during the selection
of the Penns Grove Postmaster in the fall of 2002.  Nor may we
infer any pattern of discrimination in selecting employees for
promotions without evidence of the composition of the applicant
pools for each position, as opposed to the composition of McRae's

_____

[12]  McRae submits no certification explaining what the table is, who
created it, or how the numbers were compiled.  While the document may be a
business record or public record, the Court cannot properly determine whether
it is or not.  Therefore, the document may also be inadmissible hearsay.  *See*
Fed. R. Evid. 801; 803(6),(8).  However, the Court does not rule on this
issue, rather it will grant summary judgment on other grounds.

district as a whole.  *See Blue,* 2006 U.S. App. LEXIS 12903 at *6
("The statistical reports in Blue's pleadings do not refer to the
particular [] position she applied for in 1999.  Neither do they
show the racial or gender composition of the applicant pool or
the race or gender of the successful applicants for the position.
Blue's statistics are too general to be relevant or useful in
establishing a prima facie case of discrimination.").

   This evidence is insufficient to support any causal
connection between McRae's non-selection for the Penns Grove
position and his race or gender.  Accordingly, we hold that McRae
has failed to establish a prima facie case of discrimination.

   Alternatively, even if the Court assumes that McRae has put
forth sufficient evidence that his non-selection was based, at
least in part, on race or gender, McRae's evidence fails to
establish that the Postmaster General's proffered reasons for the
decision are pretextual.  Mason's selection memorandum and
deposition testimony establish that she found Volzone better
prepared for the interview than McRae.  Specifically, Mason found
Volzone "very well prepared" for the interview because Volzone
had a "detailed" and "specific" "action plan" for improvements in
the at Penns Grove post office even though she did not currently
work at that office.  (Defs. Exs. 8; 3B at 145-46)  On the other
hand, Mason found McRae only "moderately prepared" for his
interview, despite being the current supervisor at the Penns

Grove office, because he had trouble answering questions regarding "goals for the district" and "improvements for the [Penns Grove] office." (Defs. Exs. 8; 3B at 149-51) Mason also testified that based on both candidates' past job performance, she believed Volzone would be better able to make improvements in office operations as Postmaster because she had made significant improvements in her current position, whereas McRae had not made such improvements in his current position, even though he noted that improvements were needed. (Defs. Ex. 8, 3B at 146:14-18; 148:8-12; 150:1-13)[13]

In an attempt to show that Mason's reasons for selecting Volzone were pretextual, he points to other qualities which he asserts make him the more qualified candidate. For example, at the time of the selection process, Volzone had 15 and a half years of service with the Postal Service, whereas McRae had 19 years of service. (Defs. Exs. 12, 13) McRae has an associates degree but Volzone only had a few months of college. (Id.) McRae was wounded serving in combat in Vietnam, whereas Volzone has no military service. (Id.) These comparisons of other qualifications, however, do not sufficiently "demonstrate such

---

[13] The Postmaster General also asserts that at the time of Volzone's selection, she was being paid at the same pay level as the Postmaster position-- EAS-20-- making her a lateral selection; whereas selecting McRae would have meant increased costs for the Postal Service because McRae was at a lower pay level. However, the record is not entirely clear whether Mason was aware of this fact at the time she selected Volzone, therefore, for summary judgment purposes the Court will not consider this as a reason justifying Mason's decision.

weaknesses, implausibilities, inconsistencies, incoherencies, or
contradictions in [Mason's] proffered legitimate reasons for
[her] action that a reasonable factfinder could rationally find
them unworthy of credence." *Fuentes v. Perskie*, 32 F.3d 759, 765
(3d Cir. 1994).  McRae cannot simply show that Mason's decision
was "wrong or mistaken, since the factual dispute at issue is
whether discriminatory animus motivated the employer, not whether
the employer is wise, shrewd, prudent, or competent." *Kautz v.
Met-Pro Corp.,* 412 F.3d 463, 467 (3d Cir. 2005) (quoting
*Fuentes).*

    At most, McRae's evidence perhaps raises a factual question
about who was better qualified for the Penns Grove position but
does nothing to support any inference of discrimination based on
McRae's race or gender.  The disparity in qualifications between
Volzone and McRae, taken as a whole, and considered together with
their interview performances, is not so large as to render
Mason's decision "so plainly wrong that it could not have been
the employer's real reason." *Sarullo*, 352 F.3d at 803.  Under
such circumstances, the Court will not substitute its own
judgment as to the relative qualifications of the candidates.
*See Kautz*, 412 F.3d at 468 ("An employer may not use evaluating
criteria which lacks any relationship at all to the performance
of the employee being evaluated . . . Absent this type of
violation of the *Fuentes* standard, we will not second guess the

13

method an employer uses to evaluate its employees."). Accordingly, we also hold that McRae has failed to establish pretext and summary judgment will be granted to the Postmaster General on this claim.

The Pitman Postmaster Position

McRae's evidence to support his prima facie case of race discrimination with respect to the Pitman position is even weaker.  Here, McRae asserts that he was not selected for an interview by the three-person Applicant Review Committee. However, McRae has put forth no evidence that any member of the Applicant Review Committee knew McRae or his race.[14]

McRae's Form 991, the only information available to the committee, did not indicate his race.  McRae argues, "[a]s long time employees of the Postal Service in South Jersey these committee members would be expected to know" that McRae was African American because McRae's application form stated that he spent "many years working as a letter carrier in Camden, New Jersey, one of the most impoverished cities in America with an overwhelming minority population."  (Pls. Br. at 17)  Thus, McRae reasons, "it strains credulity to believe that they really didn't assume that Paul McRae was African American." (Id.)  The Court

_____

[14]  All of the committee members held positions in offices where McRae has never worked.  (Defs. Ex. 15)

disagrees.  Such evidence does not support a reasonable inference
that any committee member knew McRae's race.  Indeed, the
committee chairman testified that he did not know McRae's race
and that race did not play a role in the committee's decision.
(Defs. Ex. 3B at 198, 210)

Moreover, McRae's evidence regarding differential treatment
of other non-African American employees and the statistical
evidence discussed above do not establish that any of the
committee members knew McRae's race when they considered his
application.

Because McRae has presented no evidence from which the Court
can even infer that the Applicant Review Committee knew of his
race, he has not established any causal nexus between his race
and the committee's decision not to recommend him for an
interview.  Accordingly, McRae has failed to establish a prima
facie case of discrimination.

Alternatively, McRae has failed to establish pretext.  The
chairman of the Applicant Review Committee testified that McRae's
application was not in the top five out of 22 applications
because "his knowledge, skills and abilities that he put down on
his 991 were fairly weak."  (Defs. Ex. 3B at 208-09) In
particular, McRae received low scores-- one point out of a
maximum of three points-- on several knowledge, skill, and
ability characteristics and did not receive a three point ranking

15

on any characteristic.  (Id.)

Here again, McRae attempts to support his pretext assertions by putting forth evidence of his qualifications relative to Richard Delp, who was selected to be the Pitman Postmaster. McRae asserts that he has more education than Delp and has served in combat while Delp has no military service.  (Pls. Br. At 6-7) McRae also asserts that he "pointed to large scale and significant matters" in his 991 Form whereas "Mr. Delp pointed to somewhat trivial issues and circumstances."[15] (Pls. Br. at 7)  As discussed above, even if the Court accepts McRae's assertions that the Applicant Review Committee's decision was a poor one, the evidence does not support a conclusion that the decision to hire Delp over McRae was so plainly wrong as to render it unworthy of belief.  *See Kautz*, 412 F.3d at 468; *Sarullo,* 352 F.3d at 803.  The disparity of qualifications between Delp and McRae is not so large as to support an inference of pretext.[16]

Accordingly, summary judgment for the Postmaster General is warranted on this discrimination claim as well.

_____

[15]  McRae does not specify what he considers to be "trivial" about Mr. Delp's application.

[16]  With respect to the Pitman position, McRae focuses exclusively on race and does not appear to assert that he was discriminated against based on gender.  However, McRae's Complaint suggests that gender discrimination influenced the Pitman selection process.  To the extent that McRae might assert that he was discriminated against based on gender, the Court holds that for the reasons stated above, McRae has failed to establish pretext with respect to gender discrimination and summary judgment for the Postmaster General is appropriate.

**B.**

Title VII also prohibits employers from retaliating against employees "for making charges, testifying, assisting, or participating in enforcement proceedings." 42 U.S.C. § 2000e-3(a).[17] McRae must establish that he engaged in protected activity, his employer took adverse action against him, and there is a causal link between his protected activity and the adverse action. *Karchmar v. SunGuard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir. 1997). A causal connection may be established by evidence of temporal proximity, a "pattern of antagonism," or the evidence as a whole may raise an inference of causation. *Id.*

The Penns Grove Postmaster Position

McRae asserts that in addition to his race and gender, the decision not to select McRae for the Penns Grove position was improperly based on his prior EEOC complaints. The Postmaster General does not dispute that the EEOC complaints are protected activity and that not receiving a promotion is adverse action.

---

[17] Unlike the discrimination provisions of Title VII which separately provide for application to Postal Service employees, there is no analogous retaliation provision of Title VII that is specifically applicable to Postal Service employees. However, at least one Court of Appeals has held that "[a] postal employee may bring suit under § 2000e-3(a) pursuant to 42 U.S.C. § 2000e-16," *Ray* v. *Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000), and the Third Circuit, though it has not explicitly stated the same, appears to agree. *See Jensen v. Potter*, 435 F.3d 444 (3d Cir. 2006)(applying § 2000e-3 to a postal employee's claim of retaliation and citing *Ray*). In any case, the Postmaster General has not raised the issue and the issue is moot given the Court's holding that McRae's claim fails on the merits.

However, the Postmaster General asserts that McRae has failed to
make out a prima facie case because he cannot establish
causation.  The Court agrees.

 McRae relies on the fact that Mason was deposed in
connection with and participated in the Settlement Agreement that
resolved McRae's prior EEOC complaints.  This evidence only
establishes that Mason was aware of the prior EEOC proceedings
but does nothing to support McRae's assertion that she acted with
retaliatory motive when selecting the Penns Grove Postmaster.

McRae also relies upon a statement made by Donna Volzone,
the woman who was selected to be the Penns Grove Postmaster.  On
her Form 991, Volzone stated in the space provided for "Equal
Employment Opportunity": "Some employees use their religious
and/or ethnic background, etc. as a tool to benefit."[18]  (Defs.
Ex. 13 at 9)  McRae reasons that Mason selected Volzone because
Mason agreed with Volzone's attitude toward equal employment
opportunity, therefore Mason must have acted with retaliatory
motive.  The Court thinks it unreasonable to draw such a
conclusion.  The fact that Mason hired Volzone does not
necessarily mean that Mason agrees with every statement Volzone
made in her application or that Mason chose not to select McRae

---

[18]  In context, the statement appears to refer to a specific problem
with a particular employee at the Newark, Delaware, post office. However,
viewing the facts in the light most favorable to McRae, the Court will accept,
for summary judgment purposes, McRae's assertion that the statement is
reflective of Volzone's general attitude toward equal employment opportunity.

because of his EEOC activity.[19]

Lastly, McRae points to a "hostile" comment made by Michael Fleury, the Human Resources Manager for McRae's district, after the Penns Grove position was filled.  McRae complained to Fleury in a telephone conversation that he was not awarded the position as he believed he should have under the Settlement Agreement. Fleury allegedly responded, "I'm not going to play ball with you if you take that attitude."  (Pls. Ex. K)  Assuming the statement's admissibility,[20] it is vague with no immediate context,[21] and it was made after Mason had chosen Volzone, therefore Fleury's statement is not probative of whether Mason acted with retaliatory motive toward McRae.

McRae would have the Court infer that Fleury somehow influenced Mason's decision.  However, there is no support in the record for that assertion.  The undisputed evidence demonstrates that McRae told Mason at the end of the interview that his settlement agreement guaranteed him the job.  (Defs. Ex. 3B (Mason testimony) at 152)  Mason later called Fleury to determine whether she was required to select McRae for the job.  (Id.; Pls. Ex. L (Fleury testimony) at 13)  Fleury merely stated that the

---

[19]   To the extent McRae also relies on this evidence to establish discrimination, the Court rejects it for the same reason.

[20]   The Postmaster General may be correct that the statement is inadmissible hearsay, however we do not decide the issue.

[21]   McRae submits only one page of his deposition transcript which does not allow the Court to ascertain the meaning of the comment.

settlement did not guarantee him the Penns Grove position. (Defs. Ex. 3B (Mason testimony) at 152; Pls. Ex. L (Fleury testimony) at 13)  Moreover, Mason testified that Fleury did not influence her decision, (Id. at 153), and Fleury testified that he did not influence her decision. (Pls. Ex. L at 13).

The Court cannot infer retaliatory motive from this evidence.  Even if the factfinder were to entirely disbelieve the testimony of both Fleury and Mason with regard to the substance of their conversation, it could not reasonably infer retaliatory motive.  The only evidence supporting McRae's retaliation claim is that Mason and Fleury knew about McRae's EEOC activities and that Mason contacted Fleury to discuss McRae and the Penns Grove position sometime after Mason interviewed the four finalists. Absent some other evidence in the record, the Court cannot hold that a reasonable factfinder could find retaliatory motive.

Viewing the evidence as a whole, in the light most favorable to McRae, he has not established that Mason's decision was motivated by retaliatory animus.  Accordingly, summary judgment for the Postmaster General will be granted on this claim.

The Pitman Postmaster Position

McRae's retaliation claim based on the selection process for the Pitman position also fails.  As discussed above with respect to McRae's discrimination claim, the only information about McRae

20

available to the Applicant Review Committee was that which McRae
listed on his Form 991.  The Form 991 says nothing about his
prior EEOC activities (Def. Ex. 18), and the Applicant Review
Committee chairperson testified that he did not know McRae or
that McRae had participated in prior EEOC activity.  (Defs. Ex.
3B at 198)  Because McRae has failed to put forth any evidence
that the Applicant Review Committee knew of his prior EEOC
activity, he has failed to establish a prima facie case of
retaliation.  Accordingly, summary judgment will be granted to
the Postmaster General on this claim.

### C.

Lastly, McRae asserts that the Postmaster General breached
the Settlement Agreement when McRae was not hired for the Penns
Grove Postmaster position.  Specifically, he relies on the
language in the Settlement Agreement which states, "[McRae] and
all candidates for the Pennsgrove [sic] Postmaster position will
interviewed and [McRae] will be given favorable consideration for
the vacancy."  (Pls. Ex. B)  McRae asserts that this language
means that he was guaranteed the job, whereas the Postmaster
General asserts that it did not.

The parties agree that federal common law of contract guides

21

the Court's interpretation of the Settlement Agreement.[22] Accordingly, the Court must determine whether the Settlement Agreement is ambiguous and if so, look to extrinsic evidence to resolve the ambiguity. *United States v. Gebbie*, 294 F.3d 540, 551 (3d Cir. 2002). "'A contract is ambiguous if it is capable of more than one reasonable interpretation.'" *Id.* (quoting *Pacitti v. Macy's*, 193 F.3d 766, 773 (3d Cir. 1999)).

McRae asserts that "favorable consideration" is capable of more than one reasonable interpretation. Indeed, if the Court were limited to examining only those two words, there appears to be some ambiguity. Webster's Third New International Dictionary defines "favorable" as "giving a result that is in one's favor" or "tending to promote or facilitate." It defines "consideration" as "deliberation, attention," or "a taking into account" or "a result of reflecting or pondering." Thus, "favorable consideration" could mean "a result of reflecting or pondering" that "results in one's favor," as McRae asserts. On the other hand, it could mean "deliberation" or "taking into account" which "tends to promote or facilitate" but does not necessitate a particular result, as the Postmaster General asserts.[23]

---

[22]   In any event, as the Court relies on basic contract law principles, the result would be the same under New Jersey law.

[23]   *See also Brewer v. Muscle Shoals Bd. Of Ed.*, 790 F.2d 1515, 1519 (11th Cir. 1986) ("Favorably consider" could mean "either 'consider in a favorable light'. . . or 'consider with a favorable result.'").

However, the Court is not limited to examining two words of the Settlement Agreement.  The entire clause reads: "[McRae] and all candidates for the Pennsgrove [sic] Postmaster position will be interviewed and [McRae] will be given favorable consideration for the vacancy."  (Pls. Ex. B)  If the Agreement contemplated that McRae would be considered with a favorable result–- i.e. the Penns Grove Postmaster position would certainly be awarded to him-- there would be no need for "all candidates for the position" to be interviewed.  Thus, the sentence read as a whole eliminates one of the two possible meanings of "favorable consideration" and the ambiguity of the phrase is eliminated. "Favorable consideration" can only reasonably mean consider in a favorable light without dictating a particular result.

Proceeding with this meaning, the Court holds that the Settlement Agreement was not breached because it did not guarantee the Penns Grove position to McRae.  McRae asserts that even if the Settlement Agreement only means he was to be considered in a favorable light, the Postmaster nevertheless breached the Settlement Agreement because Mason did not consider his application in a favorable light.  He points to Mason's lack-luster evaluation of his performance at the interview as evidence of breach.[24]  The Court disagrees.  The Postal Service fulfilled

---

[24]  Specifically, McRae points to the fact that Mason "found his application and performance to be 'moderate.'" (Pls. Br. at 13)

its obligation to "favorably consider" McRae for the Penns Grove position once he was selected to be among the five finalists.[25] Accordingly, the Court holds that the undisputed evidence demonstrates that the Settlement Agreement was not breached.

## IV.

Summary judgment for the Postmaster General will be granted on all claims.  An appropriate order will be issued.

Date:  12th , 2006

s/ *Joseph E. Irenas*
JOSEPH E. IRENAS, S.U.S.D.J.

---

[25]  For the first time in his opposition brief, McRae asserts an additional theory of breach.  He claims the Postal Service "also breached the contract when they removed McRae from the position of Officer-In-Charge of Penns Grove, a position he was to hold during the reduction in force."  (Pls. Br. at 14) However, Plaintiff did not allege such a claim in his Complaint. The only factual allegations made with respect to the breach of contract claim are: "the [Postal Service] did not provide Paul McRae with 'favorable consideration' as to the Penns Grove Postmaster position and *on October 3, 2002, breached the aforesaid agreement by preferring a white female candidate over Paul McRae and selecting said candidate for the open position.*"  (Compl. ¶ 19)(emphasis added)  The Complaint says nothing about McRae's removal as Officer-In-Charge of Penns Grove.  Accordingly, the Court disregards this argument.